UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THEODORE BRENNAN,<br>BRIDGET BRENNAN TYRRELL and<br>BRENNAN'S INC. | * CIVIL ACTION NO.  13-2491<br>*<br>* SECTION "E"<br>* |
| Plaintiffs | * JUDGE SUSIE MORGAN<br>* |
| VERSUS | * MAGISTRATE SHUSHAN<br>* |
| OWEN E. "PIP" BRENNAN,<br>BLAKE W. BRENNAN, and<br>BERT CLARK BRENNAN | *<br>*<br>*<br>* |
| Defendants | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## STATEMENT OF STONE PIGMAN WALTHER WITTMANN, L.L.C. CONCERNING JOINT REPRESENTATION

The Court has raised the issue of whether undersigned counsel may jointly represent plaintiffs, Brennan's, Inc., Theodore Brennan, and Bridget Brennan Tyrrell, in the pending dispute that has arisen with defendants, Owen E. "Pip" Brennan ("Pip"), Blake W. Brennan ("Blake"), and Bert Clark Brennan ("Clark") concerning Pip's claims that he is currently a shareholder of Brennan's, Inc. with voting rights.

For the reasons set out below, there is no ethical prohibition against joint representation of the plaintiffs by Stone Pigman Walther Wittmann, L.L.C. ("Stone Pigman") in the claims at issue in this litigation.

1.  **Applicable Legal Standards for Concurrent Representation.**

In determining whether there are ethical prohibitions as to any specific representation, Louisiana federal district courts consider their own local rules, the Louisiana

Rules of Professional Conduct (the "Louisiana Rules"), the ABA's Model Rules of Professional Conduct (the "ABA Rules"), and the ABA's Model Code of Professional Responsibility.  *CEF Funding v. Sher Garner Cahill Richter Klein & Hilbert, LLC*, No. 09-6623, 2010 WL 2773116, at *1 (E.D. La. July 9, 2010).  In the Eastern District of Louisiana, the relevant local rules, Louisiana Rules, and the ABA Rules are identical.[1]

> ## 2.   Rules of Professional Conduct Generally Allow Concurrent Representation of Organizations and Shareholders.

Rule 1.13(a) of the Louisiana Rules of Professional Conduct specifically provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."  The corporation has an interest in seeing that its books, records, bylaws and articles are respected, only its duly elected officers run the corporation and that third persons do not trespass on its property.

Indeed, Rule 1.13(g) specifically provides that "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7."  Comments to the ABA Rules acknowledge that "Paragraph (g) recognizes that a lawyer for an organization may also represent a principal officer or major shareholder."  Model Rules of Prof'l Conduct R. 1.13 cmt. at ¶ 12 (1983).

Ted Brennan is the majority shareholder and President of Brennan's, Inc.; Bridget Tyrrell, who owns the only other outstanding share of the corporation, is the Secretary of the

---

[1]      The Model Code was effectively superseded when the Model Rules were adopted in 1983.  Thus, "the extent to which the Model Code should be considered is somewhat in doubt, especially when considered in light of contradictions with the ABA Rules and the Louisiana Rules."  *P&J Daiquiri Café, Inc. v. Knox*, 2008 WL 73130 at *2 (E.D. La. March 17, 2008).

1125150v1

corporation.  That is, Stone Pigman concurrently represents the company and its only two shareholders and officers.

No law or Rule of Professional Conduct prohibits a lawyer from simultaneously representing a corporation and its sole shareholders and directors.  To the contrary, for closely-held corporations such as Brennan's Inc., such joint representation is the norm and is expressly contemplated by the Louisiana and Model Rules of Prof'l Conduct at Rule 1.13 "Organization as a Client".

Professor Dane Ciolino's annotations[2] to Louisiana Rule 1.13 provides

> Paragraph (g) acknowledges, however, that there are circumstances under which a lawyer can represent both the organization and its constituents. Indeed, such joint representation is appropriate if there is no conflict of interest. Moreover, such joint representation is appropriate, even in the face of a conflict, if each affected party gives informed consent. The lawyer must obtain the consent of the organization either from its equity participants, or from a duly authorized, independent constituent–not from the party to be represented.

This comment clarifies that 1) joint representation is proper where there is no conflict of interest and 2) joint representation may be acceptable even in the face of conflict of interest where each affected party has given informed consent.

Here, the Court has raised the possibility that there is a conflict of interest in Stone Pigman's concurrent representation of Brennan's and its only shareholders and officers in a dispute with a former shareholder.  Rule of Professional Conduct 1.7 addresses concurrent representation of current clients.  That rule provides

Rule 1.7. Conflict of Interest: Current Clients

---

[2]  Dane S. Ciolino, *Louisiana Professional Responsibility Law and Practice* (Louisiana State Bar Association ed., 2007) (2001) available at http://lalegalethics.org/.

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

The Comments to Rule 1.7 note that a possible conflict of interest does not by itself preclude representation.  Rather, "the appropriate inquiry is whether such conflict will materially interfere with the lawyer's independent professional judgment...." Model Rule of Prof'l Conduct R. 1.7 cmt. (1983).  *Lange v. Orleans Levee Dist.,* No. 97-987, 1997 WL 668216 at *2 (E.D. La. Oct. 23, 1997); *see also, Bottoms v. Stapleton*, 706 N.W.2d 411, 417 (Iowa 2005) ("only an actual conflict of interest, as defined in rule [1.7(a)], will justify disqualification."); *Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 124 Nev. 1206, 1218, 197 P.3d 1051, 1059 (2008) (finding law firms' dual representation of corporation and majority shareholder "did not involve a conflict of interest [under rule 1.7(a)] necessitating consent or barring its recovery of attorney fees").

- 4 -

Pursuant to this Rule, a concurrent conflict of interest exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client. ..."  La. R. Prof'l Conduct 1.7(a).

3.    **Stone Pigman's Joint Representation Is For A Limited Engagement In Which The Concurrent Clients' Interests Are Aligned.**

Until Stone Pigman was retained last month, neither the firm nor its attorneys had ever previously represented Brennan's, Ted Brennan or Bridget Brennan Tyrrell.  The firm was initially retained for the limited purpose of advising the clients regarding the company's foreclosure dispute and settlement with LEGGO/4, LLC.[3]  The representation did not implicate any real or potential conflicts of interest among the three clients.  The company and Ted Brennan and Bridget Tyrrell, individually and collectively, have an interest in resolving the LEGGO dispute amicably on terms that are appropriate to the company.  Neither Ted nor Bridget is at odds with the corporation in working toward a resolution of this debt which Ted personally guarantees.

During the course of that representation, Pip Brennan noticed a Special Shareholders' meeting during which he purported to remove Ted Brennan and Bridget Tyrrell as directors. After that meeting, Pip and his sons refused to leave the company's premises and have asserted themselves into the daily operations of the corporation.[4] Because this attempted usurpation of office gravely threatened the corporation's ability to conduct its affairs, including the orderly working toward a possible resolution of its debts, Brennan's and its

---

[3]     Plaintiffs will submit its engagement letters to the Court for *in camera* review.

[4]     At a status conference held in chambers in this matter on May 2, 2013. Victor Welsh, counsel of record for defendants, disclosed that he and/or his clients have been actively meeting with creditors of the corporation to negotiate to the marked disadvantage of Brennan's, Inc. as the company attempts to effect a work out of its many debts.  Mr. Welsh reported that a number of creditors have declared that they will not negotiate with Ted Brennan.

shareholders/officers retained Stone Pigman for the purpose of seeking an injunction prohibiting defendants' unauthorized acts and a declaratory judgment

> in favor of Plaintiffs and against Defendants that (i) the April 26, 2013 purported special shareholder meeting was invalid, unlawful and of no force and effect; (ii) the Defendants are not shareholders, directors, or officers of Brennan's, Inc. and have no authority to act on behalf of the corporation; (iii) Brennan's registered office and registered agent were not changed as a result of the actions taken at the April 26, 2013 purported special shareholder meeting; and (iv) Defendants have no authority to change Brennan's registered office or registered agent and that any purported changes to Brennan's registered office or registered agent made by Defendants are null and void.

Verified Petition For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction And Declaratory Judgment ("TRO Petition") p. 14.

The relief sought in the TRO Petition does not implicate any conflicts of interest-- real or perceived--between Brennan's and its only shareholder/directors.  Every corporation has an interest in seeing that its books, records, bylaws and articles are respected and that its officers run the corporation.  Similarly, all shareholders--that is, those individuals who are genuine equity owners of a corporation--are completely aligned with the corporation in this goal.  Why would any genuine shareholder be at odds with the corporation limiting those who speak on the company's behalf, or who seek to run its daily operations, to only those duly authorized to do so? No shareholder or corporation would or should countenance third parties interfering in the company's business.  Thus, the interest of Brennan's, Inc., Ted Brennan and Bridget Tyrrell are completely aligned insofar as to the actions of defendants at issue in this lawsuit are concerned. Brennan's Inc. is not asserting any claims against Ted or Bridget in this matter, or vice-versa.

- 6 -

**4.      Joint Representation May Be Acceptable Even In The Face Of Conflict Of Interest Where Each Affected Party Has Given Informed Consent.**

Louisiana Rule of Professional Conduct 1.7 does not prohibit joint representation simply because there may be a conflict of interest between the clients.  Rather, the Rule expressly recognizes that with the informed consent of the clients, joint representation may be entirely ethical and proper.  *See Ferolito v. Vultaggio*, 99 A.D.3d 19, 27-28 (N.Y. App. Div. 2012) (finding that a disinterested lawyer could reppresent both a closely held corporation and its shareholder/manager in an action brought by another shareholder to compel distribution of profits and dissolution, because the lawyer's clients "validly consented to the dual representation, thereby waiving any potential conflict.").

When Stone Pigman first undertook to represent its three plaintiffs here, as with all joint representation, the firm recognized the possibility that a conflict of interest among its clients might arise.  To that end, it discharged its ethical obligations to its clients pursuant to Rule 1.7.  To avoid any waiver of attorney client privilege and/or work product protection, Stone Pigman expressly declines to discuss in public pleadings the precise mechanism through which it ensured compliance with Rule 1.7.  Rather, it will submit for *in camera* review the Declaration of Phillip A Wittmann and its engagement letters with its clients, marked as Exhibit 1.

**5.      Plaintiffs' Right To Freely Choose Their Counsel Should Not Be Denied On Imagined Scenarios Of Conflict.**

Plaintiffs have chosen Stone Pigman as their counsel of record in this dispute.  As the Fifth Circuit has noted

> a district court is obliged to take measures against unethical conduct… .  Yet, depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.  Because of the severity of disqualification, we do not apply disqualification rules 'mechanically,' but we consider all of the facts particular to the case ... in the context of the relevant ethical criteria and with

- 7 -

> meticulous deference to the litigant's rights. Stated plainly, this
> sanction must not be imposed cavalierly.

*In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299-300 (5th Cir. 2009) (citation and quotation marks omitted).

Disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict. *See Richmond Hilton Associates v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir.1982) ("actual or likely" conflict of interest required); *Aetna Cas. & Sur. Co. v. U. S.*, 570 F.2d 1197, 1200 (4th Cir. 1978) (where "practical considerations" eliminated any possibility of conflict, district court's hypothesis based on conjecture will not support granting motion to disqualify counsel). Thus, any party seeking disqualification bears a "high standard of proof" to show that disqualification is warranted. *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *see also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983).

Moreover, disqualification of counsel incurs expense to the clients and occasions delay in the proceedings. To that end, the parties here all recognize that time is of the essence in the TRO Petition and as well in the LEGGO foreclosure set later this month (and as to which Stone Pigman is representing plaintiffs in attempting a resolution).

Stone Pigman respectfully submits that there is no conflict here, let alone one which rises to the requisite threshold.

6. <u>**Conclusion.**</u>

Stone Pigman respectfully submits that it is mindful of the ethical implications of its joint representation, has faithfully complied with the Louisiana and Model Rules of Professional Conduct and trusts that the Court agrees with it in this regard.

Respectfully submitted,


/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
Andrew D. Mendez, 26686

STONE PIGMAN WALTHER
    WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
pwittmann@stonepigman.com
amendez@stonepigman.com


*Attorneys for Theodore Brennan, Bridget*
*Brennan Tyrrell and Brennan's, Inc., Plaintiffs*



## CERTIFICATE OF SERVICE

I hereby certify that, on May 3, 2013, a copy of the foregoing Statement of Stone Pigman Walther Wittmann, L.L.C. Concerning Joint Representation has been filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.


    */s/ Phillip A. Wittmann*

1125150v1