UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THEODORE BRENNAN, et al.,                          CIVIL ACTION
    Plaintiffs

VERSUS                                             No. 13-2491

OWEN E. BRENNAN, et al.,                           SECTION "E"
    Defendants

ORDER AND REASONS

The parties in this case have come to the Court requesting a determination of the

rights of plaintiff Theodore Brennan ("Ted")[1] and of defendant Owen E. Brennan, Jr. ("Pip")

as shareholders, officers, and/or directors of plaintiff Brennan's, Inc. ("Brennan's, Inc." or

the "corporation"), along with related relief. The Court rules as follows.

BACKGROUND

The Court will not attempt to recount the long and complicated history of the

Brennan family, the Brennan's Restaurant on Royal Street in New Orleans' French Quarter

("the restaurant"), and the family's corporation, Brennan's, Inc. Suffice it to say the family

is litigious.[2] To put the instant dispute into context, however, a brief recap of the family's

history in connection with the restaurant and the corporation is in order.

Owen Brennan, Sr., the owner and founder of the predecessors to Brennan's

Restaurant and Brennan's, Inc., passed away in 1955, leaving control of the restaurant and

the corporation to his wife, Maude Brennan; their three children, Pip Brennan, Ted

---

[1] For ease of reference, the Court refers to the parties and their family members by their first names.

[2] For a more detailed examination of the history of the Brennan family and Brennan's Restaurant, *see, e.g., Brennan's, Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 359-61 (5th Cir. 2004). Additional litigation involving various family members has been filed since that time.

1

Brennan, and James Brennan ("Jimmy") (collectively, the "brothers"); and various aunts and uncles of the brothers. *Brennan's*, 376 F.3d at 358.  Settlement of a disagreement in the 1970s between branches of the family led to control of Brennan's Restaurant and of Brennan's, Inc. being placed in the hands of Maude, Pip, Ted, and Jimmy, with the aunts and uncles acquiring ownership of other New Orleans restaurants. *Id.*  After Maude's death in 1988, the three brothers were the sole shareholders in Brennan's, Inc., with each one holding 196 shares and all three serving as officers and directors of the corporation.  From the late 1980s until the mid-2000s, the corporation and restaurant apparently ran smoothly; indeed, the restaurant enjoyed its most profitable years during this time.  However, after Hurricane Katrina made landfall in August 2005, devastating the restaurant along with much of the Greater New Orleans region, relations between the brothers took a decidedly negative turn.

After Hurricane Katrina, Pip's sons Blake Brennan ("Blake") and Bert Clark Brennan ("Clark"), both of whom were former employees of Brennan's Restaurant, initiated plans to open their own restaurants in Florida and Mississippi.  *See Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1615 (2009).  Brennan's, Inc. sued Clark and Blake for trademark infringement and unfair competition.  *See id.*  Brennan's, Inc. also sued Pip in Louisiana state court for unauthorized assignment of a Brennan's, Inc. trademark to his sons.  On March 28, 2006, a meeting of the three shareholders in the corporation - Ted, Jimmy, and Pip - was held.[3]  At this meeting, discussions took place regarding Pip's involvement in Blake's and Clark's plans, which led to a resolution supported by Ted and Jimmy relieving Pip of his duties as manager of

---

[3] *See* Joint Bench Book Exhibit 47 (Minutes of March 28, 2006 meeting).

Brennan's, Inc.[4]  Ted and Jimmy also voted to terminate a 1983 compensation agreement executed between the three brothers (the "1983 Compensation Agreement").[5]  On December 19, 2006, a special meeting of the Board of Directors of Brennan's, Inc. was held.[6] At this meeting, Ted and Jimmy voted to remove Pip as an officer in the corporation, to elect Ted President, to elect Jimmy secretary, and to elect Ted's daughter Bridget Brennan Tyrrell ("Bridget"), a plaintiff in the instant suit, treasurer.[7]  On January 4, 2007, another special meeting of the shareholders of Brennan's, Inc. was held, and at this meeting, Ted and Jimmy voted to ratify the actions taken by the directors at the December 19, 2006 meeting, including the termination of the 1983 Compensation Agreement.[8]  Ted and Jimmy also voted to remove Pip as a director in Brennan's, Inc. and to elect Bridget as a "replacement director."[9]  Meanwhile, in addition to the lawsuits described above, Pip instituted litigation in state court against his brothers and the corporation; the corporation and his brothers also filed lawsuits in state court against Pip.

On February 2, 2010, a special meeting of the shareholders of Brennan's, Inc. was held.[10]  Ted, Jimmy, and Bridget were in attendance.[11]  No evidence was introduced at the May 13, 2013 hearing to establish whether notice was given of the meeting, and, if so, to

---

[4] *See id.*

[5] *See id.*

[6] *See* Joint Bench Book Exhibit 46 (Minutes of December 19, 2006 meeting).

[7] *See id.*

[8] *See* Joint Bench Book Exhibit 48 (Minutes of January 4, 2007 meeting).

[9] *Id.*

[10] *See* Joint Bench Book Exhibit 52 (Minutes of February 2, 2010 meeting).

[11] *Id.*

whom. At the meeting, one share of stock in Brennan's, Inc. was issued to Bridget as compensation for services rendered by her as treasurer and director to the corporation.[12] The Court has not been asked to determine the validity of the issuance of the share to Bridget at this time, but it is clear from the pleadings and the evidence presented at the hearing that Bridget's shareholder status is in dispute.

In July 2010, Jimmy passed away. Pursuant to a stock redemption agreement calling for the corporation to buy Jimmy's stock upon his death,[13] on October 15, 2010 Brennan's, Inc. entered into an agreement with Shawn Tiffany Brennan and Samantha Scott Brennan, in their capacities as independent co-executors of Jimmy's Succession (collectively, the "Succession"), to buy Jimmy's stock. That same day, Brennan's, Inc. executed a promissory note in favor of the Succession, obligating the corporation to pay the Succession approximately $2 million, plus interest, in exchange for Jimmy's shares of stock.[14] The Succession and Brennan's, Inc. also entered into a "Pledge and Security Agreement," which granted the Succession a security interest in the shares of stock.[15] By the terms of this agreement, the Succession was to maintain this security interest in the shares until the final payment due under the Promissory Note was paid, and the Succession was granted certain rights in the event the corporation defaulted on its obligations.[16]

---

[12] *Id.*

[13] *See* Joint Bench Book Exhibit 2A.

[14] *See* Joint Bench Book Exhibit 13 (October 15, 2010 Promissory Note).

[15] *See* Joint Bench Book Exhibit 12 (October 15, 2010 Pledge and Security Agreement).

[16] *Id.*

On December 23, 2010, after several years of intense and protracted litigation, Pip and Brennan's, Inc. entered into a "Settlement Agreement and Release" (the "December 2010 Settlement").[17]  In the December 2010 Settlement, Pip agreed to "sell to Brennan's all of his stock in Brennan's."[18]  Brennan's, Inc. agreed to "pay Pip Two Millions Dollars ($2,000,000.00) plus interest pursuant to the TERMS AND RATE set forth" in a 1983 stock redemption agreement (the "1983 Redemption Agreement"), attached as an exhibit to the December 2010 Agreement.[19]  Brennan's, Inc. agreed to pay this $2 million in "monthly installments of $20,000.00," with the first payment due on February 28, 2011.[20]  Brennan's, Inc. also agreed that "[a]s soon as the last monthly installment on the previously mentioned Two Million Dollars ($2,000,000) is completed, Brennan's will continue to pay Pip monthly installment payments of a minimum of $20,000 per month until another (One Million Dollars) $1,000,000, without interest, is paid."[21]  The agreement states that "[t]hese additional payments are in further consideration for the stock sale from Pip to Brennan's."[22]  In addition, the corporation agreed to maintain various insurance policies for Pip and his wife and to pay Pip $6,000 per month, payable on the 28th day of each month beginning in February 2011, in lieu of purchasing additional life insurance for Pip.[23]  The corporation

---

[17] *See* Joint Bench Book Exhibit 2.

[18] *Id.*

[19] *See id.*; *see also* Joint Bench Book Exhibit 2A.

[20] Joint Bench Book Exhibit 2.

[21] *Id.*

[22] *Id.*

[23] *Id.*

also agreed to forgive Pip's loan account with the corporation and to pay Pip a sum of $35,000, broken out into 24 equal monthly installments, payable on the 28th day of each month beginning in July 2011.[24]   The parties disagree about whether all or only some portion of these insurance and loan forgiveness payments were in exchange for Pip's stock. The parties also disagree about whether forgiveness of Pip's loan was consideration for the sale of stock, and, if so, the amount that was forgiven.  Pip testified that his loan balance at the time of the December 2010 Agreement was $330,000.  Bridget testified Pip's loan balance was $537,921.42.

The corporation agreed the "value of Pip's stock [would] be maintained until all payments" set forth in the December 2010 Agreement were made.[25]   As security for its obligations under the December 2010 Agreement, Brennan's, Inc. offered primary security in the form of a personal guaranty by Ted, secondary security in the form of a personal guaranty by Ted's children Bridget, Alana Brennan ("Alana") and Theodore Brennan, Jr. ("Teddy"), tertiary security comprised of a security interest in Pip's shares, and quaternary security in the form of a limited security interest in certain of Brennan's, Inc.'s intellectual property.[26]

Brennan's, Inc. quickly fell behind on its payment obligations to Pip.  Brennan's, Inc. failed to make most, if not all, payments in a timely fashion.[27]   After three checks had to be

---

[24] Joint Bench Book Exhibit 2; Joint Bench Book Exhibit 2A.

[25] *Id.*

[26] *Id.*

[27] *See* Joint Bench Book Exhibit 28 (Pip's handwritten record of payments made by Brennan's, Inc.).

6

replaced due to insufficient funds,[28] and after Brennan's, Inc. began paying Pip less than the full amount owed each month, the corporation stopped paying Pip altogether.[29] The last full payment by Brennan's, Inc. came in August 2012 (for the July 2012 scheduled payment), and the last partial payment came in May 2013.[30]  Pip testified that Brennan's, Inc. failed to pay him the full amount due under the terms of the December 2010 Agreement for the months of August 2012, September 2012, October 2012, November 2012, December 2012, January 2013, February 2013, March 2013, April 2013, and May 2013.  The parties agree these deficiencies constitute a breach of the agreement on the part of Brennan's, Inc.

At no point did Brennan's, Inc. demand the return or cancellation of any or all of Pip's stock certificates, and to date, Pip maintains possession of these documents.  Likewise, at no point did Brennan's, Inc. send written notice of redemption of all or part of the shares to Pip.

In light of Brennan's, Inc.'s failure to pay under the terms of the December 2010 Agreement and its obvious financial troubles,[31] Pip filed suit against the corporation in Louisiana state court in September 2012 to enforce the December 2010 Agreement and to accelerate the debt owed to him by the corporation under that agreement.[32]

---

[28] *See id.*; *see also* Joint Bench Book Exhibits 26-27.

[29] Joint Bench Book Exhibit 28.

[30] Joint Bench Book Exhibit 43.  This payment was made by direct deposit into Pip's account without his knowledge.  It is unclear what this May 2013 partial payment was intended to pay.

[31] In addition to the corporation's other financial difficulties described herein, the building in which Brennan's Restaurant is housed is scheduled to be sold at a Sheriff's sale on May 23, 2013.

[32] The Court takes judicial notice of Pip's petition and amended petition filed in Case Number 12-9217, Civil District Court for the Parish of Orleans, State of Louisiana.

Meanwhile, in December 2012, a judgment was entered against Ted, on behalf of the corporation, in favor of oblique plaintiffs Edward Tuck Colbert and Kenyon & Kenyon, LLP (collectively, "Kenyon"), in the amount of $4,070,135.84, plus legal interest from December 10, 2012 (the "December 2012 Judgment").[33]  On February 7, 2013, Kenyon obtained a writ of *fieri facias*, pursuant to Louisiana Code of Civil Procedure Articles 2291 *et seq.*, authorizing the seizure of Ted's property to satisfy the December 2012 Judgment.[34]  On April 25, 2013, United States Magistrate Judge Sally Shushan ordered that, pursuant to the writ of *fieri facias*, Kenyon was entitled to take control of Ted's stock certificates in Brennan's, Inc.,[35] and on April 26, 2013, Kenyon took control of those certificates.[36]  To date, Kenyon has not taken any formal steps to dispose of Ted's shares through a judicial sale or otherwise.

On April 8, 2013, Pip sent the corporation a written request for a special shareholders meeting.[37]  In this request, Pip stated his intent to raise several issues at the meeting, including the denouncement of Ted's and Bridget's conduct in running Brennan's, Inc., the removal of Ted and Bridget as officers and directors in the corporation, and the changing of the registered office and agent of the corporation.[38]   The request stated that "[t]he record date for purposes of voting rights" at the requested meeting would be April

---

[33] This Judgment was entered in Civil Action No. 12-137, a case that is pending before this Court. *See* Civil Action No. 12-137, R. Doc. 192.

[34] *See* Civil Action No. 12-137, R. Doc. 203.

[35] *See* Civil Action No. 12-137, R. Doc. 241.

[36] *See* Joint Bench Book Exhibit 25.

[37] Joint Bench Book Exhibit 6.

[38] *See id.*

8, 2013, and that "[o]nly those shareholders with voting rights and authorized by law to vote at the close of business on April 8, 2013, will be entitled to vote, in person or by proxy," at the requested meeting.[39]  On April 9, 2013, Pip issued a notice of special shareholders meeting to be held on April 26, 2013.[40]  The notice reiterated that "[t]he record date for purposes of voting rights" at the meeting was April 8, 2013, and that "[o]nly those shareholders with voting rights and authorized by law to vote at the close of business on April 8, 2013, will be entitled to vote, in person or by proxy," at the meeting.[41] No evidence has been introduced to show to whom the notice was sent.

On April 23, 2013, a special meeting of the Board of Directors of Brennan's, Inc. was held.[42]  No evidence has been introduced regarding how this meeting was called or who received notice of the meeting.  It appears from the minutes of the meeting that the attendees were Ted, Bridget, Alana, Teddy, and a lawyer named Laura Plunkett.[43]  It also appears from the minutes that Ted and Bridget voted to confirm Ted as president of the corporation, to elect Bridget as secretary, and to elect Teddy as treasurer.[44] The validity of the calling of this meeting and the actions taken there are in dispute.

On April 26, 2013, the special shareholders meeting called by Pip was held.[45]  It

---

[39] *Id.*

[40] Joint Bench Book Exhibit 7.

[41] *Id.*

[42] Joint Bench Book Exhibit 49.

[43] *See id.*

[44] *Id.*

[45] *See* Joint Bench Book Exhibits 8-9.

appears from the minutes of the meeting that Pip, Bridget, and Ted were in attendance, along with lawyers and other family members.[46]  It also appears from the minutes that Pip voted his shares and the Succession's shares[47] to take several actions: (1) to denounce them actions of Ted and Bridget as *ultra vires* and in breach of their fiduciary duties to the corporation; (2) to remove Ted and Bridget as directors and elect Pip, Clark, and Blake as directors to serve out Ted's and Bridget's terms; (3) to remove Ted and Bridget from their respective offices and elect Pip as president, Blake as secretary, and Clark as treasurer; and (4) to change the registered agent and registered office of the corporation.[48]  It appears from the record that Ted and Bridget voted against the resolution to remove them as officers and directors and that their votes were "taken under protest" by Pip and the Succession.[49]

Shortly after the meeting, Pip, Clark, and Blake, and others, entered Brennan's Restaurant, declaring that Bridget and Ted had been ousted from the corporation as a result of the meeting; that Pip, Clark, and Blake had taken control of the corporation; and that Pip, Clark, and Blake would be running the restaurant.[50]  After a "stand-off," the parties agreed that Teddy and Blake would "co-manage" the restaurant for the weekend until the parties could be heard in court.[51]

---

[46] *Id.*

[47] The validity of the purported proxy given by the Succession to Pip is in dispute.

[48] *See* Joint Bench Book Exhibit 9.

[49] *See* Joint Bench Book Exhibit 8.

[50] *See* R. Doc. 61 (Plaintiffs' amended complaint).

[51] *Id.*

On April 29, 2013, Ted, Bridget, and the corporation filed a petition in state court seeking a temporary restraining order, preliminary and permanent injunctive relief, and a declaratory judgment.[52]  Pip, Blake, and Clark were named defendants in this state court action.  Shortly after the petition was filed, defendants removed the action to this Court, invoking the Court's diversity jurisdiction.[53]  After the case was removed, the Court held a status conference on May 2, 2013.[54]  Plaintiffs' request for a temporary restraining order was denied, and plaintiffs' other causes of action were set for hearing on May 13, 2013.[55]  The parties agreed to maintain their arrangement, calling for a representative from Ted's family and a representative from Pip's family to co-manage the restaurant, until the Court ruled on the parties' requests. On May 3, 2013, defendants filed a counterclaim requesting writs of quo warranto and mandamus be directed against the corporation, Ted, and Bridget.[56]  The Court informed the parties the issues raised by the counterclaim would also be heard at the May 13, 2013 hearing.[57]  Under the then-existing pleadings, the Court found that the Succession was a party required to be joined to both the petition and the counterclaim under Federal Rule of Civil Procedure 19, but that it was not feasible for the Succession to be joined as a party in this case.  The Court instructed the parties to amend the petition and counterclaim to remove from their respective prayers all requests for relief

---

[52] R. Doc. 1-3.

[53] R. Doc. 1.

[54] R. Doc. 17.

[55] *Id.*

[56] R. Doc. 20.

[57] R. Doc. 29.  The parties consented to the plaintiffs' requests for injunctive and declaratory relief and the defendants' requests for writ of mandamus being heard in summary proceedings.

involving the determination of the rights of the Succession.[58]

On May 11, 2013, plaintiffs filed an amended complaint, seeking the following relief:

(1)     a preliminary and permanent injunction enjoining Pip, Clark, and Blake, and any person acting in concert with them, from entering the premises of the Brennan's Restaurant; and/or purporting to take any action as a shareholder, director, or officer of Brennan's, Inc;

(2)     a Declaratory Judgment that the April 26, 2013 meeting was invalid, unlawful and of no force and effect because Pip was not a shareholder in Brennan's, Inc., and, as such, had no authority to call the meeting;

(3)     a Declaratory Judgment that Pip, Clark, and Blake are not shareholders, directors, or officers of Brennan's, Inc. and have no authority to act on behalf of the corporation;

(4)     a Declaratory Judgment that the Brennan's, Inc. registered office and registered agent were not changed as a result of the actions taken at the April 26, 2013 meeting; and

(5)     a Declaratory Judgment that the Defendants have no authority to change Brennan's, Inc.'s registered office or registered agent and that any purported changes at the April 26, 2013 meeting to the corporation's registered office or registered agent are null and void.[59]

On this same date, defendants filed an amended counterclaim, requesting the following relief:

(1)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget ordering them to recognize the rights of the corporation's members or shareholders;

(2)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget recognizing the rights of Pip as a shareholder to call April 26, 2013 meeting and to vote Pip's 196 shares at that meeting;

---

[58] *See* R. Doc. 57; *see also* R. Doc. 53 (Order requesting briefing on Rule 19 issue).  Before the Court instructed the parties to amend their pleadings, defendants filed a motion to consolidate certain issues of fact and law pending in Civil Action No. 12-2442 with this case in an effort to have the Succession's rights decided without adding it as a party to this case.  *See* R. Doc. 24.  After reviewing briefs submitted by plaintiffs in this case, plaintiffs in Civil Action No. 12-2442, and the Succession (a defendant in Civil Action No. 12-2442), the Court denied the motion to consolidate.  R. Doc. 52.

[59] R. Doc. 61.

(3)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget ordering them to show cause as to the ability of Ted to vote his shares at the April 26, 2013 meeting;

(4)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget ordering that an election of officers and directors take place based on the status of the voting stock of Brennan's, Inc. as of the date of the filing of the Amended Counterclaim;

(5)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget ordering that the corporate books of Brennan's, Inc. be corrected as of April 26, 2013, to properly show the status of Pip and Ted's Brennan's, Inc. voting stock on that date; and

(6)     a writ of mandamus against Brennan's, Inc. and/or Ted and/or Bridget ordering that the corporate books of Brennan's, Inc. correctly reflect the current status of the voting stock of Pip Brennan and Ted Brennan prior to this Court's directing a writ of mandamus ordering the new election of officers and directors.[60]

On May 12, 2013, plaintiffs filed an answer to the amended counterclaim,[61] and on May 13, 2013, defendants filed an answer to the amended complaint.[62]

On May 13, 2013, a hearing was held.[63] At the hearing, Bridget testified for plaintiffs, Pip testified for defendants, and the testimony of defense witness Stephanie Audibert was proffered. On May 14, 2013, the Court entertained closing arguments from counsel for the parties and took the above issues under submission.[64] The Court has carefully considered

---

[60] R. Doc. 58. With the filing of these amended pleadings and amended prayers for relief, the parties are no longer asking the Court to determine the rights of the Succession as shareholder in the corporation. Likewise, the Court is not at this time being asked to determine the rights of Bridget as shareholder, officer, or director in the corporation.

[61] R. Doc. 69.

[62] R. Doc. 70.

[63] *See* R. Doc. 71.

[64] *See* R. Doc. 72.

the pleadings, the testimony and evidence presented at the hearing, various state and federal court pleadings of which the Court took judicial notice, and the arguments of counsel, and is now ready to rule on the parties' limited prayers for relief.

## ANALYSIS

As a threshold matter, the Court notes that because the Court is sitting in diversity, the Court applies the substantive law of Louisiana, the forum state.  *See, e.g., Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  The parties agree Louisiana law governs this case.

### I.   The Requested Injunctive Relief is Denied

The Court will first address plaintiffs' requests for preliminary and permanent injunctive relief.  Under Louisiana law, an injunction is a "harsh, drastic, and extraordinary remedy, and should only issue where the party seeking it is threatened with irreparable loss or injury without adequate remedy at law."  *Lafreniere Park Foundation v. Friends of Lafreniere Park, Inc.*, 97-152 (La. App. 5 Cir. 7/29/97); 698 So.2d 449, 452, *writ denied*, 97-2186 (La. 11/21/97); 703 So. 2d 1312.  "In order to obtain a preliminary injunction a plaintiff must show that he will suffer irreparable harm if the injunction is not granted, that he is entitled to relief sought, and he must make a prima facie showing that he will prevail on the merits."  *Id.* If the action complained of is unlawful, however, the plaintiff need not show the action will cause the plaintiff irreparable harm.  *Id.*  The trial court has "great discretion" to grant or deny a request for preliminary injunctive relief.  *Id.*  A preliminary injunction maintains the status quo until final determination on the merits of the case. *See id.; see also La. Granite Yard, Inc. v. LA Granite Countertops, L.L.C.*, 45,482 (La. App. 2 Cir. 8/18/10); 47 So.3d 573, 581, *writ denied*, 10–2354 (La. 12/10/10); 51 So.3d 733

(internal citation omitted).  In this case, the parties agreed to consolidate hearings on plaintiffs' requests for preliminary and permanent injunctive relief and have those requests heard simultaneously and in a summary proceeding.  Because  the parties agreed to maintain the status quo until the merits of this case could be decided, plaintiffs' request for preliminary injunctive relief is moot.

Unlike a preliminary injunction, the issuance of a permanent injunction takes place only after a trial on the merits, and the party seeking the permanent injunction must prove its entitlement to the relief by a preponderance of the evidence.  *See, e.g., Farmer's Seafood Co., Inc. v. State ex rel Dep't of Pub. Safety*, 2010–1746 (La. App. 1 Cir. 2/14/11), 56 So.3d 1263, 1266.  To obtain a permanent injunction, the party requesting the relief must demonstrate that irreparable injury will result if the injunction is not granted, regardless of the lawfulness of the defendant's actions.  *See* LA. CODE CIV. PROC. ANN. art. 3601; *see also Elysian Fields Church of Christ v. Dillon*, 08-989 (La. App. 4 Cir. 3/18/09); 7 So.3d 1227, 1232.  In this case, the Court finds that plaintiffs did not prevail on the merits with respect to Pip's status as a shareholder.  Furthermore, defendants have not requested a writ of mandamus with respect to the status of Clark and Blake as officers and directors and do not assert these two individuals are shareholders, so plaintiffs' request for permanent injunctive relief with respect to them is moot.  Finally, plaintiffs have failed to demonstrate by a preponderance of the evidence that irreparable harm will result if the Court fails to grant the relief requested.  At trial, Bridget testified the uncertainty caused by the rift between the two branches of the Brennan family is having a negative effect on the restaurant's employees but that the restaurant's operations are running relatively smoothly under the current co-management arrangement.  Feelings of tension amongst employees

and animosity amongst adverse litigants do not amount to an irreparable injury. Plaintiffs'
request for permanent injunctive relief is denied.

## II.    Declaratory Relief

Plaintiffs' requests for declaratory relief fall into two categories: (1) the rights of Pip,
Clark, and Blake as shareholders, officers, and directors in Brennan's, Inc.; and (2) the
validity of the April 26, 2013 meeting. The Court will address each category in turn.

### A.    Blake and Clark are Not Shareholders, Officers, or Directors; Pip is a Shareholder but not an Officer or Director

Plaintiffs seek a declaration that neither Pip nor his sons Clark and Blake are
shareholders, officers, or directors in Brennan's, Inc. As explained below, Pip is a
shareholder in the corporation, so plaintiffs' request for declaratory judgment is denied
insofar as it seeks a declaration to the contrary. There has been no argument or evidence
presented that Clark or Blake are shareholders in the corporation, so plaintiffs' request for
a declaratory judgment that neither Clark nor Blake is a shareholder is granted.

With respect to plaintiffs' request for a declaratory judgment as to Pip's, Clark's, and
Blake's status as officers or directors in the corporation, the undisputed evidence at the
hearing was that Pip was removed as officer and director in the corporation in 2006, and,
as explained below, the April 26, 2013 meeting at which Pip, Clark, and Blake were
purportedly elected as officers and directors in the corporation was not proven to be
properly called or conducted. As a result, neither Pip nor Clark nor Blake has been validly
elected to the position of officer or director in Brennan's, Inc., and plaintiffs' request for a
declaratory judgment on this issue is granted. Pip, Clark, and Blake are not officers or
directors in Brennan's, Inc. at this time.

### B.    The April 26, 2013 Meeting Was Not Properly Called or Conducted

The April 26, 2013 special shareholders meeting called by Pip was not properly called or conducted and, as a result, none of the corporate resolutions or elections voted on at that meeting is of any effect.  Pip testified at trial that he issued notice of the meeting, one day after requesting the meeting, because he did not know who, if anyone, held the position of secretary of Brennan's, Inc.  Section 73(B) of the Louisiana Business Corporations Law authorizes a shareholder to call a special meeting only if the secretary of the corporation refuses or neglects to call the meeting for a date within 60 days after receipt of the written request.  *See* LA. REV. STAT. ANN. § 12:73(B).  Pip did not wait the requisite amount of time before calling the meeting on his own.  Even if the meeting was timely and properly called by Pip because there was no duly elected secretary of the corporation, it has not been established that all shareholders were given notice of the meeting or that all shareholders were allowed to attend and vote their shares.[65]  Only a properly noticed meeting at which all shareholders present are allowed to vote their shares can result in valid corporate action.  Plaintiffs' request for a declaratory judgment that the April 26, 2013 meeting was invalid, unlawful, and of no force and effect is granted.

### 1.    The Registered Office and Registered Agent of Brennan's, Inc. Were Not Changed

Because the April 26, 2013 meeting was invalid, the corporate resolutions adopted and elections held during that meeting are null and void, including the resolutions to change the corporation's registered office and agent.  Accordingly, plaintiffs' request for a

---

[65] Under the current circumstances, it is unclear who the shareholders are, and, absent an agreement of all interested parties, it appears impossible for there to be a validly noticed and held meeting of the shareholders.

declaratory judgment that neither the registered office nor the registered agent of the corporation was changed as a result of the meeting is granted.

> **2.      Pip, Clark, and Blake Did Not Have Authority to Change the Registered Office or Registered Agent of Brennan's, Inc. at the April 26, 2013 Meeting**

In addition to the April 26, 2013 meeting being invalid, which means that Pip, Clark, and Blake had no authority to change the registered officer or agent of the corporation at that meeting, Clark and Blake are not shareholders, officers, or directors in the corporation with the right to vote on corporate matters. Plaintiffs' request for a declaratory judgment that Pip, Clark, and Blake had no authority to change the registered office and registered agent of the corporation at the April 26, 2013 meeting is granted.

## III.    Writ of Mandamus

The Court now turns to defendants' prayers for relief in the amended counterclaim, all of which fall under the umbrella of the writ of mandamus set forth in Louisiana Code of Civil Procedure articles 3861-3866.[66] "By definition, mandamus is an order directing performance." *In re Interdiction of Vicknair*, 01-902 (La. App. 1 Cir. 7/21/02); 922 So.2d 46, 49. A writ of mandamus may be directed to an officer of a corporation to compel the corporation to recognize the rights of the corporation's members or shareholders. LA. CODE CIV. PROC. ANN. art. 3864; *see also Vicknair*, 922 So.2d at 49. Before issuing a writ of mandamus to an officer of Brennan's, Inc. compelling the corporation to recognize the rights of the corporation's shareholders, the Court must first determine who exactly those shareholders are. *See Vicknair*, 92 So.2d at 49. This determination of shareholder status,

---

[66] In the original counterclaim, defendants sought relief in the form of a writ of mandamus and a writ of quo warranto under Louisiana Code of Civil Procedure articles 3901-3902. *See* R. Doc. 20. In the amended counterclaim, defendants removed their claims for a writ of quo warranto.

at least with respect to Ted and Pip, is at the heart of all six writs requested in the amended counterclaim.  The Court will address Ted's status before turning to Pip's status.[67]  The Court's findings as to Ted's and Pip's status are limited to their status as shareholders as of May 11, 2013, the day the amended complaint and amended counterclaim were filed.

### A.    Ted is a Shareholder in Brennan's, Inc.

The Court finds that Ted was the record owner of 196 shares of stock in Brennan's, Inc. as of May 11, 2013.  While his stock certificates were seized pursuant to a writ of *fieri facias* by counsel for Kenyon, it is undisputed that Kenyon has not taken the steps necessary under Louisiana law to sell the shares of stock represented by those certificates. A writ of *fieri facias* directs the seizure and sale of property.  A seizing creditor, by the mere act of seizure, acquires a privilege on the property seized but does not acquire ownership. *See* LA. CODE CIV. PROC. ANN. arts. 2291-2343.  Under Louisiana law, an owner of shares of stock retains his right to vote those shares of stock unless and until the ownership of those shares is formally transferred to another person or entity.  *See Foreman v. Hines*, 314 So.2d 460, 464 (La. App. 4 Cir. 1975).  While a certificate of stock serves as prima facie evidence of corporate ownership, actual ownership and shareholder status is determined from all the facts and circumstances of a case.  *Vicknair*, 822 So.2d at 50.  In this case,  the stock is still registered in Ted's name and Ted has established from all the facts and circumstances of this case that he remains the owner of the shares, even if he does not have them in his possession.  Thus, Ted maintains his right to vote those shares.[68]  *See Foreman*, 314 So.2d

---

[67] Again, the Court does not address Bridget's nor the Succession's shareholder status at this time.

[68] At oral argument on May 14, 2013, counsel for defendants conceded that Kenyon's seizure of Ted's certificates did not divest Ted of his shares or his ability to vote those shares.

464.  To the extent defendants' amended counterclaim seeks a writ of mandamus directed to the corporation ordering Ted to show cause as to his ability to vote his shares, that request is denied.   Instead, the Court will issue a writ of mandamus ordering the corporation to reflect on its books that Ted is the record owner of 196 shares in Brennan's, Inc. as of May 11, 2013.

### B.    Pip is a Shareholder in Brennan's, Inc.

The Court finds that Pip was the record owner of 196 shares of stock in Brennan's, Inc. as of May 11, 2013.  On that date, all 196 shares remained of record in Pip's name,[69] and the certificates remained in Pip's possession.  As explained above with respect to Ted, record ownership of stock serves as prima facie evidence of corporate ownership, and ownership of shares of stock in a corporation carries the right to vote those shares.  *See* LA. REV. STAT. ANN. § 12:75; LA. REV. STAT. ANN. § 12:601; *Vicknair*, 822 So.2d at 50.   As the record owner, Pip had the right to vote those shares and, pursuant to  Brennan's, Inc.'s Articles of Incorporation and Articles of Amendment,[70] he had the right to request the corporation's secretary notice a special shareholders meeting.[71]

Furthermore, Pip has not been divested of his ownership by virtue of the December 2010 Agreement.  The Court finds that the December 2010 Agreement, with the 1983 Stock Redemption Agreement attached as Exhibit A,  was a stock redemption agreement within the meaning  of Section 75A of the Louisiana Business Corporations Law (" Section 75A ").

---

[69] *See* Joint Bench Book Exhibit 17 (Pip's stock certificates).

[70] *See* Joint Bench Book Exhibit 1.

[71] The Court has found, however, that even though Pip had the right to request the meeting, and would have the right to vote his shares at a properly called meeting, Pip did not establish that all shareholders were given proper notice of the meeting and an opportunity to vote at the meeting.

Under Section 75A, a shareholder of record is entitled to vote each of his shares at every shareholders' meeting, and even if the corporation has decided to redeem the shares, the shareholder maintains his right to vote those shares until the entire redemption price is paid or a sum sufficient to redeem the shares is deposited.  *See* LA. REV. STAT. ANN. § 12:75A.[72]

Under certain circumstances, prima facie evidence of stock ownership may be rebutted upon a showing from all the facts and circumstances of the case that actual ownership is otherwise.  *Vicknair*, 822 So.2d at 50.  In this instance, Ted and Bridget have the burden of proving facts and circumstances to rebut Pip's presumption of ownership of the shares as of May 11, 2013.  Ted's and Bridget's sole argument is that the December 2010 Agreement was not a stock redemption agreement within the meaning of Section 75A but instead was a completed sale which immediately divested Pip of ownership.  Thus, they argue, Section 75A does not apply.

Even if Bridget and Ted were given the benefit of the doubt, and the Court found that the December 2010 Agreement was ambiguous on this front, the Court would find the intent of the parties was for the agreement to be a stock redemption agreement within the meaning of Section 75A.  Under Louisiana law, "[i]nterpretation of a contract is the

---

[72] Section 75A provides as follows:

Except as provided in R.S. 12:136 and R.S. 12:140.12, and except as otherwise provided in the articles, each shareholder of record shall have the right, at every shareholders' meeting, to one vote for each share standing in his name on the books of the corporation; provided that on and after the date on which written notice of redemption of redeemable shares has been mailed to the holders thereof and a sum sufficient to redeem such shares has been deposited with a bank or trust company with irrevocable instruction and authority to pay the redemption price to the holders thereof upon surrender of certificates therefor, such shares shall not be entitled to vote on any matter and shall not be deemed to be outstanding shares.

LA. REV. STAT. ANN. § 12:75A.

determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045.  When a contract's terms are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties.  LA. CIV. CODE ANN. art. 2046.  However, when the contracting parties' intent is less than clear, the "agreement shall be construed according to the intent of the parties, which is to be inferred from all of the surrounding circumstances." *New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 09-1433 (La. App. 4 Cir. 5/26/10); 40 So.3d 394, 401-02 (citing *Derbes v. GBS Properties*, 04–1460 (La. App. 5 Cir. 4/26/05); 902 So.2d 1109, 1111).

If the December 2010 Agreement were ambiguous, the Court would have to attempt to determine the intent of the parties.  *Kirksey*, 40 So.3d at 401.  Ted did not testify at the hearing so he provided no evidence of his intent with respect to the interpretation of the December 2010 Agreement.  The corporation did not produce minutes from any meetings at which the execution of the agreement or the ownership of the stock thereafter was discussed.  No corporate stock ledger was introduced into evidence to show what, if any, changes were made on the books of the corporation with respect to record ownership of Pip's shares.  Ted and Bridget failed to establish the amount they believe was to be paid for Pip's shares in full or on a pro rata basis.  Instead, the only evidence presented regarding the parties' intent was Pip's testimony at trial.  Pip testified his intent was that the stocks would be redeemable over time, only if and when the corporation called for pro rata redemption of a specific number of shares, and only upon the corporation clearly establishing the amount required to be paid for the shares and that this amount had been paid.  The only alternative, in his opinion, was that all his stock would be redeemable upon the corporation's call for redemption of all shares after payment in full had been made to

the satisfaction of Pip and the corporation.  Considering Pip's testimony and the lack of testimony or evidence from Ted, Bridget, and/or the corporation, the Court finds that, even if the December 2010 Agreement were ambiguous, Bridget and Ted failed to prove that the intent of the parties was for the transaction to be a completed sale not subject to Section 75A.  Instead, the evidence demonstrates the parties intended for the December 2010 Agreement to be a stock redemption agreement and for Pip to retain ownership of his shares until the shares were redeemed in accordance with Section 75A. [73]

Finally, the Court notes that the parties dispute the amounts that have been paid and/or forgiven, and whether all such amounts are in consideration for the sale of Pip's stock.  As a result,  the redemption price has not been paid full nor has a sum sufficient been deposited.  The case of *Guidry v. Gulf Coast Coil Tubing*, 09-621 (La. App. 3 Cir. 12/9/09); 24 So.3d 1019, involved a dispute over the price to be paid under a redemption agreement similar to the situation presented by the case at bar.  *Id.* at 1021-25.  In affirming the trial court, the appellate court noted that Section 75A provides a holder of redeemable shares of stock maintains his right to vote those shares unless and until a sum sufficient has been deposited.  In that case, the amended articles called for redemption of shares at "book value" and the redemption letters called for redemption at a rate of $1.00 per share - two values that are not necessarily the same.  Thus, the sum sufficient for redemption had not been determined.  *Id.*  Because the sum sufficient had not been determined, the redemption was never effected, and the ousted directors maintained their rights as shareholders.  *Id.*

In this case, Ted and Pip disagree as to the consideration to be paid Pip for his stock.

---

[73] Indeed, a shareholder's sale of his shares of stock to the corporation in which those stocks are held is the definition of a stock redemption; by definition, the sale of the shares back to the corporation is a redemption of those shares by the corporation.

Since the corporation's monetary obligations to Pip in connection with the redemption agreement are unclear, the stock has not been redeemed.  *See Guidry*, 24 So.3d 1025.

To the extent defendants request a writ of mandamus ordering the corporation to recognize that Pip was the record owner of 196 shares as of May 11, 2013, the request is granted.

### C.    Writ of Mandamus to Brennan's, Inc.

Defendants' request for a writ of mandamus is granted.  The corporation is ordered to recognize Pip as the record owner of 196 shares of stock in Brennan's, Inc., with the right to vote those shares, as of May 11, 2013.  The corporation is further ordered to recognize Ted as the record owner of 196 shares of stock in Brennan's, Inc., with the right to vote those shares, as of May 11, 2013.

### CONCLUSION

**IT IS ORDERED** that plaintiffs' request for preliminary injunctive relief be and hereby is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that plaintiffs' request for permanent injunctive relief be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' request for declaratory judgment be and hereby is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

**IT IS FURTHER ORDERED** that defendants' requests for writs of mandamus be and hereby are **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

**New Orleans, Louisiana, this  17th   day of May, 2013.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

24